of the day is People v. Driggers for the appellant, Mr. Williams, and for the appellee, Mr. Londrigan. You may proceed. May it please the court. Mr. Londrigan, my name is James Ryan Williams. On behalf of the Office of the State Appellate Defender, it is my privilege to represent Mr. Driggers before this honorable court. In 2008, the Illinois General Assembly faced a problem, and that problem was that people were evading the metal knuckle prohibition by possessing what were, in design, quintessential metal knuckles, but that were being manufactured out of a hard plastic composite. And because they were made out of plastic, they were not technically metal knuckles and were therefore illegal. To address this problem, legislation was introduced to amend the Unlawful Weapons Statute, which prohibited metal knuckles, to also prohibit knuckle weapons regardless of their composition. The legislative transcript from the floor debate makes clear that the amendment was only intended to address the problem of metal knuckles that were being manufactured out of a hard plastic composite, hence the phrase, regardless of their composition. In fact, during the floor debate, the bill's sponsor, Representative Crespo, stated four separate times that the bill was not intended to change the current law. Counsel, I have a question about that. Let's assume that we're under the prior law and the item we have here today is made of all metal. Would it have complied? Would it have been illegal? No, Your Honor, because the Unlawful Weapons Statute prohibits very specific weapons. The items listed in that statute are all very specific weapons, such as like a blackjack, a slingshot, a throwing star, and the statute does not specifically prohibit trench knives. It specifically prohibits your quintessential metal knuckles. Does it define metal knuckles? No, Your Honor, and frankly, that's one of the problems with the statute. It doesn't define metal knuckles, nor does it define knuckle weapons. The bill ultimately passed, and effective in 2009, all metal knuckles were illegal regardless of their material composition. A few years later, in January 2012, my client, Mr. Driggers, was caught with a weapon that is undeniably a knife, but because of the knife's handle, which is similar to military-issued trench knives, the state characterized it as a knuckle weapon. You see, knuckle weapons are illegal under the Unlawful Weapons Statute. Most knives, however, are not. Now, Mr. Driggers, is it logical for the legislature to say you can't have a knuckle weapon, but if you've got a big old knife attached to the knuckles, then it's okay? Well, Your Honor, again, I don't mean to repeat myself, but the statute does deal with very specific weapons. The legislature could have included trench knives in that list, or alternatively, the legislature could have... It seems to me your point is that because the knuckle weapon has a knife blade attached to it, it's no longer a knuckle weapon. Well, Your Honor, again, knuckle weapon is really just like a permutation of the metal knuckle prohibition. We're dealing with either quintessential metal knuckles, which are a very specific weapon, or metal knuckles that are made of any composition, such as plastic, I guess, perhaps wood. But can't this weapon be used as a quintessential metal knuckle? You can grip it and punch and increase the impact of your punch, and you don't have to necessarily stab someone. Well, first of all, its use in that respect would probably be impractical because it does have a nine-and-a-half-inch blade. It's a fairly large knife. And the fact that a weapon could simply... The fact that a weapon merely has the capacity to be used as an illegal weapon does not necessarily make it an illegal weapon, because if that were the case, countless perfectly innocent items could be arbitrarily construed as illegal weapons. Well, take the flip side of that, then. Isn't your interpretation of this a weapon, one that could totally circumvent the statute? In other words, the addition of a can opener to these knuckles would make it a can opener in your interpretation, or a key ring, or a screwdriver. Just because there is the addition of a blade, do you believe that that necessarily takes away from its other feature, which is that being a knuckle weapon? Well, to that end, Your Honor, again, the legislator could have specifically chosen to criminalize trench knives, but he did not do so. And again, the weapons listed are very specific weapons, and it simply does not include trench knives. But going back to this, would you agree that absent the blade, this is a very different looking than the weapon in people beat cold that you cite to? Correct, Your Honor. Without the blade, I would admit, if you broke the blade off or fell off or whatever, at that point you would have perhaps what could be considered a, it's similar to a set of metal knuckles in that respect. And in its current form, it can be used as a metal knuckle? Yes. Again, it could be used as metal knuckles, but again, I believe it would be impractical to do so, first of all. And second of all, the mere fact that a weapon can be used as an illegal weapon does not make it an illegal weapon. Well, in the cold case that Justice Harris mentioned, I mean, you couldn't use it as a metal knuckle without first stabbing the person. That's something that makes this situation different. Wouldn't you agree? Absolutely, Your Honor. Anyhow, the mere possession of an illegal weapon by a felon is a per se violation of the Felon in Possession Law. So by characterizing the knife as a knuckle weapon, the State was able to charge Mr. Driggers as being a felon in possession without having to prove that he possessed the knife with an unlawful intent to use it against another. And again, the basis of the State's characterization in this respect was the 2009 amendment, which prohibited knuckle weapons regardless of their composition. The State argued, in spite of legislative transcripts clearly indicating otherwise, that the amendment was intended to expand the law and that the amendment was intended to prohibit anything that merely has the capacity to be used as a knuckle weapon. It seems that the State misunderstood the meaning of the word composition in the amended language and seemed to think that it meant regardless of how the weapon was designed, when in fact composition was merely referring to the material composition of the weapon. As the Fifth District made clear in Whitfield, metal knuckles is a very clear and precise term describing a very particularly designed weapon. Again, if the legislature wanted to ban trench knives, they could have done so, but they did not include them in the unlawful weapon statute. There simply is no legal support for the State's contention that the intent of the unlawful weapon statute is to prohibit anything that merely has the capacity to be used as an illegal weapon. And embracing this position would essentially mean that a baseball bat or a hammer could be arbitrarily construed as an illegal bludgeon, or a basic gear or sprocket could be arbitrarily construed as an illegal throwing star. And arguably any knife or sword that's ever been produced with a hand guard or basket hilt could be arbitrarily construed as a knuckle weapon because it has the capacity to be used as such. I'm curious then, in terms of your analysis, if then is a matter of the determination as to what the function is of the weapon, the primary function that determines whether or not it's a knuckle weapon or a knife, is that it? Yes, Your Honor. In Cole, for example, the court looked to the main purpose of the weapon, which, and in determining the main purpose of the weapon, they looked at the main injury that the weapon would likely inflict. Well, Justice Holder-White already, I think, put that one to rest because the picture in Cole clearly indicates that it can only be used as a knife. So put the weapon in Cole aside and looking more at this trench knife at issue here. So who is to determine then, under your analysis, whether or not this constitutes a knuckle weapon versus another type of weapon? And does that then necessarily mean that there can't be a dual-purpose weapon that would be considered partly a knuckle weapon prohibited by statute? Well, I think initially the trial court would probably be initially tasked with determining whether a weapon falls within the prohibition of the very specific weapons at issue. And, of course, I think the trial court could rightfully make that determination. Okay. And I'm sorry to interrupt, but just in that regards, you say it's not that the weapon can be used in a certain way that should determine what it is because things can be used as weapons and that's not their intended function. How's the trial court to determine whether or not, in this instance, this is a I intended that this be used as X and then the trial court is to base its decision on that type of evidence? How are we to know, you know, what the primary function is of something? Well, I think to that end, Your Honor, I think a trial court could easily just look at a particular weapon and based on its appearance determine what its likely main function would be, what its likely central injury would be. And in this case, again, we have a nine and a half inch blade, which, again, I do believe it would be quite impractical to actually use this in a knuckle weapon type fashion. But, moreover, I think the main injury that would be inflicted by this weapon, you know, would be a nine inch stab wound or perhaps, you know, slashing versus actually trying to punch somebody with it because again, if you were to use this as a knuckle weapon, it seems actually that you might be exposing yourself, you know, to potential injury. And really, when we look at this particular weapon, it seems to me that it's, you know, probably more of a collector's item than an actual, you know, dangerous weapon that people are out there hitting people with. You know, it seems like this is just a collector's item and as many people do, they like to collect, you know, like the case in coal, these very unusual weapons. And, again, there are countless, you know, weapons or even just perfectly innocent items that can be used to augment the impact of a punch or that could be used as other or in a similar way as other specifically prohibited weapons. But the simple fact that a weapon has the capacity to be used as a knuckle weapon, again, Your Honor, multiple courts of this state, actually seemingly every court of this state that's examined the unlawful weapons statute, seems to uniformly urge a narrow interpretation of what constitutes an illegal weapon. And People v. Tate, the first district court narrowly applied the unlawful weapons statute in concluding that karate sticks were not illegal bludgeons. And People v. Fink, the second district court, narrowly interpreted the unlawful weapons statute in concluding that a nightstick was not an illegal bludgeon. And they actually specifically did so because of concerns that a broad reading would invite undue abuse. And the second district, again, in coal, narrowly read the unlawful weapons statute specifically in part because of concerns that a broad reading would mean that any object could be classified as a set of metal knuckles based solely on the way the object is gripped. So it seems that this court should likewise narrowly read the unlawful weapons statute and conclude that the weapon in question here is not a set of metal knuckles. To briefly conclude my first argument, the trial court's reading of the unlawful weapons statute was unconstitutionally overbroad. And only through such an unconstitutionally broad reading could Mr. Drigger's knife be considered an illegal knuckle weapon. Again, the fact that an item has the capacity to be used as an illegal weapon does not make it an illegal weapon under the unlawful weapons statute, which again lists very specific weapons. Again, if that were the case, countless items could be arbitrarily construed as I would move on to my second one. Thank you. The Second Amendment protects the right to keep and bear arms, not just firearms. The Supreme Court ruled in Heller that the Second Amendment extends prima facie to all instruments that constitute bearable arms. The court then defined arms as anything that a man takes into his hands or uses in wrath to cast at or strike another. Now, this definition clearly does not limit the applicability of the Second Amendment to specifically firearms. To the contrary, it seems inclusive of countless weapons, not the least of which are knives. Now, again, Mr. Drigger's was a felon, but the unlawful weapons statute knuckle weapon prohibition does not just apply to everyone. And I guess to be clear there, the Felon in Possession Law incorporates by reference the unlawful weapons statute. And it essentially says that if a felon possesses one of the very specific, specifically enumerated weapons that are listed in the unlawful weapons statute, that what would be a misdemeanor offense for a non-felon is enhanced to a felony, and thus is a per se violation of the statute. So if this court were to agree with the state that anything that merely has the capacity to be an illegal weapon is indeed an illegal weapon, it would seemingly create a blanket prohibition on the possession of trench knives by law abiding citizens. Such a ruling would create misdemeanors out of countless innocent people, such as military weapons collectors, soldiers who returned home with their trench knives in tow, museum curators who display historic trench knives, and arguably anyone who possesses a knife or a sword with a handguard or basket hilt, because again, these items would clearly have the capacity to be used as a knuckle weapon. Such an overly broad definition would contravene the protections of the Second Amendment. The fact is Mr. Drigger's knife is first and foremost, it is constitutionally protected. Again, because the felon in possession law only prohibits felons from possessing knives if they do so with an unlawful intent to use it against another, Mr. Drigger's had the constitutional right to possess this knife. And because he had that constitutional right, the unlawful weapons statute was unconstitutionally applied to him. Unless this court has any questions regarding my second argument, I would just respectfully request that for the reasons discussed here and in briefing, that this Honorable Court vacate Mr. Drigger's conviction for unlawful possession of a weapon by a felon. Thank you all very much for your time. Thank you. You'll have additional time on your bottle. Thank you, Your Honor. Mr. Linder. Good morning, Your Honors. May it please the Court, Counsel. I really don't have a great deal to add in addition to what I have in my brief. It seems from listening to Counsel's argument, though, the dichotomy that we have here is you can't look at the purpose of the statute, but yet, you know, you are to look at the purpose of the statute when trying to determine whether or not this is a metal knuckle or not. He wants to, or I believe the position of the defendant is that if I use it for anything other than the purpose of a metal knuckle, it's therefore outside the prescriptions of the statute. And I think that's what I read Whitfield is saying is pretty restrictive, saying the fact that you wrap something around your wrist or your fist and you use it as a metal knuckle is commonly used does not make that item a metal knuckle. So I think that's pretty restrictive. Cole, I think, is trying to look at, trying to define specifically what is a metal knuckle. And they actually have a picture of it, and I think it was the Webster's, not the one that is cited here. It was the Webster's third new international dictionary that was cited by Cole, but I was looking at another unabridged Webster's that actually had a picture of it. And I think that definition, the last one in the Webster's third international, actually tries to describe it as, you know, four rings that go around the fist with a transverse piece that it's attached to. And I think that's about as good a definition as we're going to get. And I think counsel even admits that what we have in this instance is a set of metal knuckles or a knuckle weapon, if you will, with a blade attached to it. I think Justice Harris makes a very good point. If you were to put a bottle opener on there or any other item which would give this a dual purpose, would that bring it outside the prescriptions of the statute? Clearly I don't think that's the legislative intent. You know, it's probably not my place to suggest what the court might do if they wanted to allow such a weapon to exist, but I think you'd want to look at what the judicial or the legislative intent was in passing this statute. It's interesting to note why they define metal knuckles as having an inherently dangerous or unusual makeup. They don't give us the reasons why. Nothing's been suggested in the legislative history that would give us aid to that. But, you know, perhaps if the weapon was altered in such a state that it had removed what was considered inherently dangerous about it, we might have something to discuss, but that does not seem to be the case before the court today. Well, arguably the defendant could say here that given the configuration, there is a practical purpose of having what appears to be the knuckle component attached to the blade. You know, if at the trial court level the trial judge had heard testimony from some expert that indicated it enhances the grip or, you know, maybe meat cutters, you know, their hands slip off of the handle and this is a safety feature. So, you know, could there be a situation, not that we're dealing with that here because we don't have any such testimony, but could there be a situation where someone comes in and explains that this is actually a feature of a knife as opposed to it being the second part of a dual purpose weapon, that being a knuckle weapon and a knife. And in that situation it would be fact intensive as opposed to just a general prohibition against trench knives. I think I understand where the court's going. My suggestion there would be not to concentrate on the purpose because I think that you're going to open Pandora's box with that type of analysis. I would look more on what the intent was behind the legislature in prohibiting metal or knuckle weapons in the first place. Maybe it was because the weapon was inherently small. It could be hidden. You didn't know you had it on your person and it could do a great deal of damage and it had no value other than to inflict, you know, damage on your opponent without anybody knowing that you possessed the thing. So if it was such a weapon that could be defined in terms outside of the legislative concern, then you might come up with a justification as to why it should not be prohibited. But if you want to add in purpose, which I understand Whitfield is trying to do just the opposite. Whitfield's saying, no, we're not going to get into what the purpose of the weapon is. It is a knuckle weapon or it's not simply by the way it looks. And I think that's what we probably need to do in this instance as well. I understand what you're saying and I think there is room for that argument perhaps in the future, but it would have to be, I think, under a discussion of what was the intent behind the legislature in prohibiting this use or this particular weapon and how is that concern not being violated by allowing the weapon at issue. That would be my suggestion, Judge. As opposed to the constitutionality of the, I don't believe that there is any constitutional prohibition against outlawing strange and unusual weapons. It's done all the time. It is restricted. Why a set of metal knuckles or a knuckle weapon is more dangerous than a magnine, I don't know. But that's not what I'm being asked to do today. The legislature makes those determinations and they decided metal knuckles were more dangerous than a magnine. So you can't have metal knuckles and I think that's the way it is. If you don't have any further questions. Thank you. Rebuttal? Thank you, Your Honor. I'd just like to address three points, really. First of all, the legislative intent, the purpose behind the unlawful weapon statute, it seems quite clear, is to prohibit very specific weapons. Again, the legislator could have included a catch-all phrase as it actually did in the following subsection where it used the words or other dangerous knife. That would be a catch-all phrase that would include lots of different permeations of a particular weapon. But here instead, they list just very specific weapons. And as to the cold definition, the cold court examined, I believe it was three or four various definitions, dictionary definitions, and then essentially created their own based on those definitions and said that a set of metal knuckles is a weapon for the same purpose, to increase the power and hence the impact of a punch. And the fact is, the weapon at question here just does not fit within that definition. And as to Mr. Londrigan's, or excuse me, the State's claim that this is a dangerous and unusual weapon, first of all, there's no legal basis for that conclusion. And interestingly, when I looked into the various examples of what constitutes a dangerous and unusual weapon, I found that there was kind of a common thread between all of them. A couple of examples were like a short-barreled shotgun or a firearm with an obliterated serial number or even a pipe bomb. And what all of these weapons have in common and how they're distinguishable from Mr. Drigger's knife is that all of these weapons have no purpose unrelated to criminal activity. There's no legitimate purpose to have a pipe bomb or to have a firearm with an obliterated serial number. And to your point, Justice Harris, this knife here actually does have a purpose. It has a practical purpose. And in fact, it was my client's claim that it in fact does enhance the grip and that it's actually a hunting knife and can be used whenever you're cutting up the rest of the particular weapon. And in that respect, the weapon in question here, again, it's unlike your typical dangerous and unusual weapons, which again have no purpose, seemingly no purpose that is unrelated to criminal activity. Here not only do you have a legitimate purpose with the way that you hold the knife, but there's also the basic purpose of collecting these items. I mean, again, these type of weapons were military issued for the entire last century. And so there are lots of soldiers, I'm sure, that possess these weapons. There are military weapons collectors that possess these weapons. There are museum curators that display these weapons for historic purposes. And if we were to include, or excuse me, if this court were to include trench knives and the metal knuckle prohibition simply because they can conceivably be used in a similar manner, again, it would seemingly create misdemeanors of all of these perfectly innocent people. Unless the court has any further questions, again, I would just respectfully request that you vacate Mr. Brigger's conviction for unlawful possession of a weapon by a felon. Thank you all very much.